**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| TONY W. SEAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:16-CV-295 |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tony W. Seay ("Seay") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Seay, acting *pro se*, filed a letter noting his medical conditions, attached two medical records from treatment visits in June 2016 and February 2017, and stated he did start receiving SSI benefits as of May 5, 2016. See Dkt. No. 15; Dkt. No. 19. I conclude that substantial evidence supports the ALJ's decision as a whole, and that the newly submitted evidence does not warrant a remand of this action. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 17) and **DENYING** Seay's Motion for Summary Judgment (Dkt. No. 15).[2]

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, I substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

[2] As a pro se litigant, Seay is entitled to a liberal construction of his pleadings, thus I will construe his submission as a motion for summary judgment. See Miller v. Barnhart, 64 F. App'x 858, 859 (4th Cir. 2003)

1

support the Commissioner's conclusion that Seay failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Seay protectively filed his disability application seeking SSI benefits on May 15, 2013, claiming a disability onset date of May 10, 2013. R. 191, 219. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 87-118, 123–40. On October 8, 2015, Administrative Law Judge ("ALJ") William Barto held a hearing to consider Seay's disability claim. R. 49–86. An attorney represented Seay at the hearing, which included testimony from both Seay and vocational expert Tony Melanson. Id.

On December 3, 2015, the ALJ entered his decision analyzing Seay's claim under the familiar five-step process[4] and denying his claim for benefits. R. 24–41. The ALJ found that

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant

2

Seay suffered from the severe impairments of degenerative disc disease, recurrent arrhythmias, major dysfunction of a joint, anxiety disorder, affective disorder, and alcohol, substance addiction disorder. R. 26. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 27. The ALJ held that Seay retained the residual functional capacity ("RFC") to perform light work, except that he can occasionally climb, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds. R. 29. He is limited to occasional operation of foot controls with the left lower extremity, and is limited to simple routine tasks with occasional contact with supervisors and the general public. Id.

The ALJ determined that although Seay was unable to perform relevant past work as a tractor-trailer driver (R. 39), he could work at jobs that exist in significant numbers in the national economy, such as a mailroom clerk, hand packer, and housekeeper. R. 40. Thus, the ALJ concluded that Seay was not disabled. Id. On April 25, 2016, the Appeals Council denied Seay's request for review (R. 1–7), and the present appeal followed.

## **ANALYSIS**

On appeal, Seay, acting *pro se*, does not make any specific argument as to why the ALJ erred in finding him not disabled, but does supply new medical records and notes his subsequent approval for SSI as of May 5, 2016. Dkt. No. 15, Dkt. No. 19. For the reasons that follow, I conclude that the new evidence is irrelevant and immaterial, and substantial evidence in the record supports the ALJ's conclusion that Seay was not disabled during the relevant time frame.

---

maintains the residual functioning capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## Newly Submitted Evidence and Subsequent Disability Finding

In his first letter dated January 31, 2017, Seay notes the various medical treatment he has received, including "approximately" seven knee operations, with the final operation "ending in a complete knee replacement." Dkt. No. 15, p. 1. Seay has a pin in his left ankle limiting mobility, has undergone two back operations and four operations on his left wrist, has had three heart attacks, suffers from high blood pressure, was diagnosed with bipolar disorder, anxiety, post-traumatic stress disorder and night terrors, and he uses a cane and walker for mobility. Id. Seay also states that he will be undergoing a full knee replacement of his right knee. Id. The attached treatment record from Carilion Clinic ("Carilion"), dated February 1, 2017, lists the various medications Seay uses and states that the reason for the visit was to discuss surgery due to his right knee pain. Dkt. No. 15-1. Seay also provided a treatment record from Lewis Gale Hospital Allegheny ("Lewis Gale"), dated June 9, 2016. Dkt. No. 15-2. The reason for this examination was for Seay's right knee pain. The findings state: "There is no fracture. There is no dislocation. There is a very small suprapatellar effusion. Note is made of a likely loose body posterior to the femur." Id. Seay also noted he was awarded SSI after this ALJ's decision.

"[I]n order for the court to properly grant a remand due to additional evidence, the additional evidence must be new, material *and relate to the period on or before the date of the ALJ's decision*." Duncan v. Astrue, 1:09CV00042, 2010 WL 723710, at *18 (W.D. Va. Feb. 26, 2010) (emphasis added) (citing Wilkins v. Secretary of Dep't of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir.1991)). Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Wilkins, 953 F.2d at 96. Seay has the burden of demonstrating that a

remand is appropriate given any new and material evidence. Meadows v. Astrue, Civ. Action No. 5:08cv01129, 2010 WL 1380117, at *3 (S.D. W.Va. Mar. 31, 2010).

Here, Seay provides no explanation as to how the newly submitted medical records relate to his condition during the relevant period—on or before December 3, 2015, the date of the ALJ's opinion. Both of these records are dated well after the ALJ's decision. Additionally, the record from Carilion provides little to no insight in Seay's functioning as of February 2017— it simply states that the reason for his visit was to discuss surgery for his right knee pain and lists Seay's current medications, allergies and vital signs. Dkt. No. 15-1. Further, the record from Lewis Gale tends to undermine Seay's allegation of the seriousness of his knee issues – the doctor finds no fracture or dislocation. See Dkt. No. 15-2. There appears no reasonable possibility that the new evidence would have changed the outcome of this case, and thus remand is not warranted for consideration of this evidence.

As to the subsequent favorable disability decision, courts in this district have addressed on several occasions whether such a decision constitutes sufficient grounds for a remand. Compare Phillips v. Astrue, Case. No. 7:12cv194, 2013 WL 485949, at *3-4 (W.D. Va. Feb. 5, 2013) (finding remand based simply upon a subsequent finding of disabled to be an incorrect application of the law); with Hayes v. Astrue, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007) (holding that a subsequent favorable finding of disability may itself constitute new and material evidence warranting remand where the record does not reflect whether the new favorable decision relied upon additional evidence). The Fourth Circuit has stated in an unpublished opinion that "a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." Baker v. Comm'r of Soc. Sec., No. 12-1709, 2013 WL 1866936, at *1 n.1 (4th Cir. May 6, 2013) (quoting

5

Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009)). Thus, no question exists that a remand is warranted if additional evidence submitted in support of a subsequent favorable decision is considered new and material to the initial application, and the claimant had good cause for not submitting the evidence in the prior proceeding. See, e.g., Allen, 561 F.3d at 653-4 (6th Cir. 2009) ("[R]emand would be appropriate based on [a] subsequent favorable decision only if the subsequent decision was supported by new and material evidence that [a claimant] had good cause for not raising in the prior proceeding."); Sayre v. Astrue, Civ. No. 3:09–01061, 2010 WL 4919492, at *4 (S.D. W.Va. Nov. 29, 2010) (remanding upon finding that the evidence underlying a subsequent determination was new and material); cf. Hayes, 488 F. Supp. 2d at 565 (W.D. Va. 2007) (holding that a subsequent decision may be considered new and material evidence depending upon the nature of the evidence supporting the subsequent decision).

Here, the record which formed the basis of the disability finding was generated well after the Appeals Council denied review of the present claim. See Dkt. No. 21, p. 1-12. Specifically, the Commissioner gave great weight to a medical opinion rendered on January 18, 2017, over two years after the ALJ's decision. Dkt. No. 21, p. 3, 11. Seay has not explained how this record would relate back to the relevant period in this matter and thus would be material to this application. Accordingly, I do not find that a remand is appropriate based upon either the subsequent award of disability or the underlying evidence supporting that award.

## Substantial Evidence

As to the other operations and ailments Seay lists in his letter, he provides no treatment records supporting these allegations. The ALJ discussed extensively Seay's back pain, knee pain, mobility, and mental health, and the record provides substantial evidence in support of the ALJ's decision that Seay was not disabled from his alleged onset date of May 10, 2013 through the date

6

of decision on December 3, 2015. The medical evidence established the existence of physical and mental impairments; however, the ALJ found that the evidence fails to establish corresponding functional loss rising to the level of total disability during the relevant period. The medical record shows that Seay was diagnosed with degenerative disc disease, recurrent arrhythmias, major dysfunction of a joint, anxiety disorder, affective disorder, and alcohol-substance addiction disorder. However, "[t]he mere diagnosis of an impairment does not establish that a condition is disabling; there must be a showing of related functional loss." Hawkins v. Astrue, C.A.8:08-3455HMHBHH, 2009 WL 3698136, at *4 (D.S.C. Nov. 3, 2009) (citing Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986)).

The ALJ followed the five-step process and concluded that Seay did not have a disability which prevented him from engaging in competitive employment. See Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005). Upon review of both Seay's physical and mental impairments, the ALJ correctly found that he suffers from severe impairments that still allow him to perform light work with limitations for his physical and mental impairments. The ALJ proceeded through steps one to four in favor of Seay, finding that he had not engaged in substantial gainful activity since the application date; he suffered from numerous severe impairments; he did not suffer from one or a combination of listed or similarly severe impairments; and his residual functional capacity restricted him to only light work with several limitations. R. 26–39. However, the ALJ found in the fifth step that Seay could perform a job that existed in significant numbers in the national economy, and thus found him disabled. R. 40. I find that substantial evidence supports the ALJ's evaluation of Seay's medical records, his treatment of the opinion evidence, and his credibility analysis.

**Medical Evidence**

The evidence from Seay's medical records reveals mild to moderate physical findings with more severe mental impairments, which the ALJ recognized when formulating the RFC. While Seay consistently complained of pain, physical examinations were mostly unremarkable and suggested that Seay exaggerated his symptoms. R. 290–293, 358, 371–452, 871–872, 881–882. In February 2012, Seay exhibited a normal range of motion, but straight leg raise tests were positive on the right with 4/5 strength of the right lower extremity secondary to pain. R. 291. A lumbar spine MRI and x-ray revealed no spondyliosthesis and multilevel degenerative changes. R. 294. In September 2012, after complaining of chest pain, Seay was diagnosed with non-cardiac chest pain, elevated Troponin's[5] of unclear etiology, coronary artery disease status post-PCI with three subsequent cardiac catheterizations, hypertension, dyslipidemia and anxiety. R. 363. A stress electrocardiography was negative for ischemia. R. 372.

Seay did not have active cardiopulmonary disease in January 2013. R. 825, 830. In August of 2013, Seay complained of back pain, but a physical examination revealed normal active range of motion in all extremities with lumbar tenderness. R. 1056–1057. A left ankle x-ray in November 2013 revealed advanced degenerative changes (R. 1778), and a myocardial perfusion imaging study for his chest and limb pain showed small to moderate, partially reversible defect involving the mid-inferoseptal and mid-interior wall, likely due to motion artifact and GI activity. R. 1782–1784. A stress ECG was normal and left ventricle myocardial perfusion was otherwise normal without evidence of ischemia or infarction. Id.

In December 2013, Victoria McMeen, M.D., found that Seay was able to sit without difficulty, ambulate normally, and his heart had a regular rate and rhythm. R. 1830–1834. Dr.

---

[5] A troponin test measures the levels of troponin T or troponin I proteins in the blood to distinguish between unstable angina and a myocardial infarction (heart attack). See Troponin test, MEDLINEPLUS MEDICAL ENCYCLOPEDIA (2017), https://medlineplus.gov/ency/article/007452 htm (last visited Aug 7, 2017).

McMeen noted that Seay's thoracolumbar spine range of motion was decreased due to pain and he exhibited pain using his lower back, left knee and ankle. Id. Seay was unable to perform a right heel-to-knee test secondary to lower back pain and sitting and supine straight leg raise tests were positive. R. 1833. Dr. McMeen diagnosed Seay with left knee pain, back pain, coronary artery disease and elevated blood pressure. Id. Also in December 2013, David Leen, Ph.D., performed a psychiatric consultative examination of Seay. R. 1837–1840. Dr. Leen reported that Seay was fully oriented and exhibited no abnormalities of posture, gait or motor movements. R. 1838. Dr. Leen found Seay's speech was rapid and consistent with anxiety, and that his thought processes appeared concrete and mildly distractible/tangential. Id. Seay reported a history of four to five psychiatric hospitalizations for treatment of depression and took Ativan for panic attacks, which occurred once or twice weekly. Id. Dr. Leen diagnosed Seay with depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified with generalized anxiety disorder; and a panic disorder with possible social phobia features. R. 1839.

Seay presented to the emergency room in February 2014 and March 2014 for complaints of chest pain and tachycardia. R. 1842, 1868. Testing was normal and his symptoms were related to anxiety and medication non-compliance. R. 1848. The physical examination revealed normal strength in all extremities, normal mood and insight and normal affect. R. 1856. Stress tests continued to be negative for ischemia in July 2014. R. 1909. In January 2015, Seay was admitted to Carilion Clinic for chronic major depression and possible intermittent hypomanic episodes and an alcohol use disorder. R. 2000. Seay was only able to recall one of five words after a five-minute delay, and his mental status exam was normal upon discharge. R. 1998–2000, 1976. At the end of January and in February 2015, Seay went to Horizon Behavioral Health for outpatient

9

mental health services. R. 2003, 2007. Mental status exams were largely normal. R. 2005, 2009. Judgment was mildly impaired and his long and short-term memory was impaired. R. 2009.

In February 2015, Seay also received four days of inpatient treatment from Virginia Baptist Hospital. R. 2038–2069. A mental status exam on the date of discharge showed selective concentration, intact memory in all domains, normal to slightly overactive psychomotor behavior and goal-directed thought process. R. 2040. Seay went to Lynchburg General Hospital in March 2015 with suicidal thoughts and he admitted drinking a pack of beer earlier that day. R. 2095–2096. Seay continued to have chest pain and feel depressed through June 2015. R. 2027–2037, 2071–2093, 2263–2265. Progress notes from Horizon Behavioral Health in July 2015 indicated that Seay had a stable mood, normal cognition, intact memory, fair insight and auditory and visual hallucinations. R. 2311.

Seay fell down some stairs and presented to Lynchburg General Hospital with knee and back pain on July 14, 2015. R. 2425–2436. Examination showed decreased range of motion secondary to pain. R. 2428. Seay was given a knee immobilizer and crutches. R. 2427. X-rays revealed degenerate changes in the bilateral knee and at L4-L5 in the lumbar spine. R. 2436. Treatment notes from Lynchburg General Hospital on July 23, 2015 indicate Seay had a normal range of motion through his extremities, no tenderness in his back, and normal muscle strength. R. 2349. Notes from Horizon Behavioral Health and Virginia Baptist Hospital indicate that Seay's personality issues seemed to predominate his functioning problems. R. 2490, 2439. Specifically, notes from Virginia Baptist Hospital state: "He has been frequently hospitalized for various psychiatric reasons and appears to, at this point, be potentially trying to build a disability case as he has had a similar presentation now for the third hospitalization and tends to be discharged with less than 24 hours of being on the service." R. 2438–2439. Seay was admitted to

10

Virginia Baptist Hospital again on July 29, 2015, and notes state that during the admission, Seay "frankly stated his intention of accumulating a mental health record with criteria adequate to obtaining disability, which has been previously denied on medical grounds." R. 2381.

**<u>Opinion Evidence</u>**

As to opinion evidence, the ALJ gave little weight to the opinion of state agency psychological consultant Donald Bruce, Ph.D., that Seay did not have a severe mental impairment, holding that the medical evidence does support a finding of severe mental impairments. R. 37. The ALJ gave great weight to the opinion of David Leen, Ph.D., who determined that Seay is unable to perform complex or challenging work activities with or without supervision, is consistently able to perform simple repetitive work activities in a timely and appropriate manner and is able to maintain reliable attendance in the workplace. R. 37, 1839. Dr. Leen found that Seay is able to accept instructions from supervisors on a consistent basis, deal effectively with the public in a vocational setting, and is able to complete a normal workweek without interruptions from his depressive and anxiety disorder symptoms. R. 1839–1840. Dr. Leen also concluded that Seay is generally able to deal with the usual stresses of competitive work provided that he has a well-structured and supportive employment setting. R. 1840.

The ALJ also gave great weight to the opinion of Joseph Leizer, Ph.D., a state agency psychological consultant who found that Seay is able to perform simple, unskilled work with limited involvement with supervisors or the general public. R. 37, R. 115. He similarly gave great weight to the opinion of James Wickham, M.D., a state agency medical consultant who found Seay capable of light exertional work with occasional postural activities, but unlimited balancing and operation of hand and/or foot controls. R. 37, R. 96–97. The ALJ determined

though that "additional medical evidence supported finding greater limitations with regard to the claimant's operation of foot controls and climbing of ladders, ropes and scaffolds (Exhibits 8F; 12F; 14F; 33F)." R. 37.

Dr. McMeen determined that Seay is able to stand for about six hours and walk for about six hours in an eight-hour workday, with no sitting restrictions. R. 1833. She also found that Seay is able to lift and/or carry 25 pounds occasionally and 10 pounds frequently, and that he has no manipulative limitations. R. 1834. Dr. McMeen stated that Seay is limited in postural abilities with no need for an assistive device to walk. R. 1834. The ALJ gave great weight to Dr. McMeen's opinion because "[i]t is supported by the findings of the consultative examination, indicating limited range of motion in the lumbar spine. However, the undersigned found subsequent evidence supportive of occasional posturals with no climbing of ladders, ropes and scaffolds, and limited operation of foot controls with the left lower extremity (Exhibits 8F; 12F; 14F; 33F)." R. 37. The ALJ also gave great weight to the opinion of Bert Spetzler, M.D., a state agency medical consultant whose opinion was consistent with Dr. McMeen's opinion. R. 37. Dr. Spetzler found that Seay is capable of light exertional work, with occasional postural activities, but he can never climb ladders, ropes or scaffolds. R. 112–113. The ALJ again noted though that "greater postural limitations were appropriate" when formulating Seay's RFC. R. 38.

Justin Anderson, M.D., Seay's treating cardiologist, stated he had seen Seay every four to six months since June 2012 and determined that Seay is incapable of "low stress" work due to frequent chest pain, shortness of breath and his anxiety over potentially experiencing a heart attack. R. 1883–1884. Dr. Anderson also stated that Seay is able to walk one to two blocks without rest, stand or walk for less than two hours, sit for at least six hours, and lift no more than 10 pounds, but never climb ladders and rarely climb stairs. R. 1884–1885. Dr. Anderson found

12

Seay should avoid all exposure to extreme heat, cold, high humidity, avoid even moderate exposure to cigarette smoke, and avoid concentrated exposure to pulmonary irritants. R. 1885. Dr. Anderson determined that Seay would likely be off task at least twenty percent of the workday and likely miss more than four days of work per month. R. 1886. In an updated opinion, Dr. Anderson concluded that stress and anxiety play a large role in Seay's symptoms. R. 2169. Dr. Anderson noted that Seay has been evaluated multiple times for his chest pain, but no clear physiological reason exists to explain the pain. R. 2172. He believed that the majority of Seay's symptoms stemmed from Seay's anxiety over his cardiac health, and that these symptoms do limit him from even minimal physical activity. Id. Dr. Anderson stated that these symptoms are episodic and could occur at any time, but tend to occur more frequently when Seay is not taking medication. Id.

The ALJ determined that Dr. Anderson's opinion was not deserving of controlling weight because it is "not well-supported by the other medical evidence of record, including the claimant's mental health records from [Lynchburg General and Virginia Baptist] Hospital and Horizons Behavioral Health (SSR 96-2p)." R. 38. The ALJ found that "the claimant's mental health records are questionable with regard to possible malingering and exaggeration of his psychological symptoms in order to build a case for disability (Exhibits 23F/6; 28F/3; 44, 30F/3)." Id. The ALJ then concluded that he placed "other weight on this opinion, which indicates that the claimant's physical symptoms are not related to his cardiovascular impairments." Id.

Substantial evidence supports the ALJ's treatment of the medical and opinion evidence in the record. Drs. McMeen and Spetzler largely provided similar medical opinions regarding Seay's physical functioning, and Drs. Leen and Leizer provided similar opinions regarding

13

Seay's mental functioning. All of these opinions are supported by the medical record. The ALJ also thoroughly discussed why he gave less weight to Seay's treating physician, and the ALJ's determination is supported by substantial evidence. Dr. Anderson is a cardiologist, not a mental health practitioner, and while the ALJ discounted Dr. Anderson's opinion as to the effect of Seay's mental health impairments on his physical functioning, the ALJ did place weight on the aspect of Dr. Anderson's opinion which found Seay's physical symptoms unrelated to any cardiovascular issues. The ALJ's analysis reflects reasoned consideration of the medical opinions in relation to the entire record. The RFC properly accounted for all of Seay's physical and mental limitations established by the medical evidence. I find no error in this analysis and find that substantial evidence supports the ALJ's evaluation of the medical opinions of record.

**Credibility**

Finally, Seay's subjective allegations of pain and limitations are not conclusive. Rather, under the two-step credibility[6] analysis, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Seay met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms.

---

[6] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.
  Here, SSR 16–3p was issued long after the ALJ's consideration of Seay's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).
  However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Seay's report of his own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate the intensity and persistence of the claimed symptoms and their effect upon Seay's ability to work. Id. at 594–95.

Here, the ALJ followed the required two step process, and determined first that there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce Seay's symptoms, such as pain. R. 35. See SSR 96–7p, at *1. The ALJ set forth Seay's subjective complaints about the intensity, persistence and limiting effects of his symptoms in detail in his opinion. R. 29–36. In step two, the ALJ concluded that Seay's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible. R. 35. The ALJ determined that Seay's statements about his symptoms and limitations are not consistent with the objective medical evidence and other evidence in the record. Id. Specifically, the ALJ set forth Seay's medical treatment history in detail and noted that the degree of severity of Seay's alleged symptoms lacks support when considering Seay's actual level of functioning, his own statements, and physical and mental examinations. The ALJ first states:

> In terms of the claimant's limited daily activities and functioning, the record shows that the claimant has actually engaged in a higher level of daily activities than he alleged or reported (Exhibit 1E). He reported on March 19, 2015 that he had a job painting the next morning (Exhibit 24F/7). A treatment note from May 2015 indicated that the claimant was walking up to a mile each day and would occasionally have some chest discomfort (Exhibit 19F/18). He also mowed the grass and vacuumed. In late May 2015, the claimant was climbing a ladder and fell about nine feet (Exhibit 22F/17).
>
> Moreover, while objective evidence reveals degenerative changes in the claimant's lumbar spine and ankle, his presentation and physical examinations have been inconsistent (1F; 7F/45; 8F). Treatment notes during this hospital admission indicated that the claimant had good posture with restless motor activity, but pain with walking and using a cane (Exhibit 22F/19). There was no back tenderness noted. In July 8, 2015, the

15

claimant denied any physical limitations to his therapists at Horizon
Behavioral Health (Exhibit 26F/19). Recent physical examinations were
unremarkable for any back pain or spinal tenderness (Exhibits 30F/5;
31F/8). The consultative examination found the claimant able to ambulate
without use of a cane (Exhibit 10F).

R. 35–36.  The ALJ also noted that Seay's "recurrent arrhythmia and chest pain appears to be associated with his non-compliance with treatment and medication." R. 36.  The ALJ then states:

> The record reflects that the claimant has made inconsistent statements
> regarding matters relevant to the issue of disability. He denied a history of
> illicit drug use at the hearing, but Dr. Leen noted that a September 2012
> medical record referred to a prior history of opiate dependence (Exhibit
> 11F/1). The claimant also testified at the hearing to having 'terrible' mood
> swings, but denied frequent irritable and angry moods to Dr. Leen. He
> testified that he is able to lift 10 pounds, but reported to Dr. McMeen that
> he is able to lift 15 pounds. He also told Dr. McMeen that he does not
> drink alcohol (Exhibit 10F/2-3). He was 'quite defensive about his use of
> Clonazepam and repeatedly said that he has never had a problem with
> alcohol despite numerous documentation of alcohol dependence/abuse
> diagnosis in recent past' (Exhibit 26F/22). These discrepancies diminish
> the persuasiveness of the claimant's subjective complaints and alleged
> functional limitations.

R. 36. Finally, the ALJ noted:

> [T]he record generally suggests that the claimant was seeing physicians
> primarily in order to generate evidence for this application and appeal,
> rather than in a genuine attempt to obtain relief from allegedly disabling
> mental symptoms. The treatment notes indicated that the claimant 'frankly
> stated his intention of accumulating a mental health record with criteria
> adequate to obtaining disability, which has been previously denied on
> medical grounds' (Exhibit 28F/3, 44). Dr. Sims noted that the claimant has
> been frequently hospitalized for various psychiatric reasons and appeared
> to, at that point, be potentially trying to build[] a disability case as he has
> had a similar presentation now for the third hospitalization and tends to be
> discharged with less than 24 hours of being on the service (Exhibit
> 30F/3)…

Id.

It is apparent from the decision that the ALJ reviewed with detail the medical record regarding Seay's impairments and measured his statements about the severity of his symptoms

16

and limitations against the objective medical evidence. It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ's evaluation of Seay's symptoms is supported by substantial evidence, and the court will not disturb it.

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that Seay's Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** from the court's docket.

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

    Enter: August 7, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge